871 P.2d 838

James FUHRMAN, Plaintiff–Appellant,

v.

Colt WRIGHT, Defendant–Respondent.

James FUHRMAN, Plaintiff–Respondent,

v.

Colt WRIGHT, Defendant–Appellant.

Nos. 20435, 20436.

Court of Appeals of Idaho.

March 23, 1994.

Daniel L. Hawkley, Boise, for appellant James Fuhrman.

Robert R. Chastain, Boise, for respondent Colt Wright.

PERRY, Judge.

This appeal concerns the applicability of the Mobile Home Park Landlord–Tenant Act[1] to the relationship between James Fuhrman, the landlord and owner of a mobile home park, and Colt Wright, whose mobile homes occupied two lots in the park, between October 1989 and April 1991. We are asked to review the district court's intermediate appellate decision affirming in part and reversing in part the magistrate's ruling on Fuhrman's motion for summary judgment. In its ruling, the magistrate denied Fuhrman's unlawful detainer claim and his claim for rent based on an implied-at-law agreement. The district court's decision reversed, however, the magistrate's holding that the Act abrogates the landlord's right to enforce any agreement other than a written rental agreement. As explained below, we hold the magistrate's interpretation of the Act to be correct. Accordingly, we affirm the district court, in part, but reverse the district court's conclusion giving Fuhrman an opportunity to

1. I.C. § 55–2001 to –2019 (1988 and Supp.1993).

prove a right to recover under some implied agreement or equitable theories.

## FACTS AND PROCEDURE

On October 1, 1989, Fuhrman became the owner and operator of a mobile home park located on East 37th Street in Garden City. Sometime prior to that date, Wright had installed two mobile homes and paid rent for the two lots to Fuhrman's predecessor under an unwritten rental agreement. When Wright and Fuhrman first met, Wright requested a written agreement for each lot and withheld rental payments pending receipt of a written agreement. Fuhrman never provided a written rental agreement to Wright, but repeatedly made demands for rent. Although Wright and Fuhrman apparently failed to reach an agreement, Wright continued to occupy the two lots without paying any rent until April 1991, when he removed the mobile homes from the park.

Fuhrman served Wright with a three-day notice to pay rent or surrender the premises on May 20, 1990, claiming $1,360 in back rent for the two lots at a rate of $85 per month per lot from October 1989 "pursuant to a rental agreement by which you hold possession of two mobile home lots." The notice also advised of rent increases to take effect July 1 and September 1, 1990, and set September 15, 1990, as the date by which Wright was to remove his mobile homes from the park premises. The next action taken by Fuhrman was the filing of a complaint against Wright in May 1991, seeking recovery of rental payments under an implied agreement and under the unlawful detainer statutes and also for treble damages as authorized by § 55–2016 of the Act.

The magistrate denied Fuhrman's subsequent motion for summary judgment on his claims for rent due. The magistrate ruled that the Act was the exclusive remedy available to Fuhrman. Neither party having set the matter for further proceedings as directed by the magistrate's order of March 23, 1992, the magistrate thereafter dismissed the action, including the counterclaim filed by Wright. The magistrate entered final judgment on May 12, 1992.

Fuhrman appealed from the judgment and from the magistrate's conclusions in the memorandum decision and order on summary judgment. Fuhrman challenged the magistrate's holding that he was not entitled to recover under the unlawful detainer statutes and that the Act abrogated his rights as park owner to recover other than under a written rental agreement. The district court on appeal affirmed the denial of Fuhrman's motion for summary judgment, but reversed the magistrate's conclusion that, under the Act, only ·a written rental agreement is enforceable. The district court on appeal held that while the Act applied only to written rental agreements, some "other agreements" or other legal theories may apply, entitling Fuhrman to some compensation or redress, such as for unjust enrichment or for reasonable storage rates. Fuhrman and Wright each filed a notice of appeal from that portion of the district court's appellate opinion which was adverse to him.[2]

## ANALYSIS

In this appeal, the sole issue raised by Fuhrman is whether the Mobile Home Park Landlord–Tenant Act controls his right to recover rental payments from Wright. He contends the district court erred in affirming the magistrate's application of the Act to require a written rental agreement as the exclusive means to recover rent. Accordingly, he asserts that it was error for the district court to affirm the order of the magistrate defeating Fuhrman's claims under the unlawful detainer statutes and under an agreement arising by operation of law. Fuhrman argued that he was not limited to the claims left open to him by the district court's decision. Because we conclude the issue raised by Fuhrman is dispositive, we do not address any issues raised by Wright's appeal.

---

**2.** The two notices of appeal were filed on the same day. Each was given a separate case number by the clerk of the Supreme Court, and the appeal filed second in time was not entered as a cross-appeal. In setting the briefing schedule, it was determined that Fuhrman should file the appellant's brief, to be followed by respondent-Wright's brief. The two case numbers were consolidated for all purposes of the appeal.

■ Where the issues before the appellate court are the same as those presented to the district court sitting in its appellate capacity, the appellate court will review the trial record with due regard for, but independently from the district court's decision. *In re Baby Boy Doe*, 123 Idaho 464, 849 P.2d 925 (1993); *Haley v. Clinton*, 123 Idaho 707, 851 P.2d 1003 (Ct.App.1993). As to questions concerning the application of law, we will exercise free review. *Everitt v. Higgins*, 122 Idaho 708, 838 P.2d 311 (Ct.App.1992). In determining the legislative intent as to the scope of a statute, the appellate court will examine the reasonableness of proposed interpretations and policy behind statutes so that all sections of the applicable statutes can be construed together. *J.R. Simplot Co., Inc. v. Idaho State Tax Comm'n*, 120 Idaho 849, 820 P.2d 1206 (1991).

Idaho Code § 55–2004 defines the purview of the Act as follows:

> This chapter shall regulate and determine legal rights, remedies and obligations arising from any rental agreement between a landlord and a tenant regarding a mobile home lot, except in those instances in which the landlord is renting both the lot and the mobile home to the tenant. All such rental agreements shall be unenforceable to the extent of any conflict with any provision of this chapter.

The legislature recognized a difference between the customary residential tenancy and the unique nature of the landlord-tenant relationship between a park operator-landlord and a mobile home owner-tenant, resulting from the significant cost and effort in installing the owner's mobile home in a park. Indeed, the legislative intent, as expressed in the statement of purpose to the enacting legislation, was "to provide the mobile home owner certain statutory rights not now included in the Idaho Code." Statement of Purpose R.S. 5699, H.B. 651, 1980 Idaho Sess.Laws. Notably, the Act provides that a mobile home owner is entitled to a written agreement. I.C. § 55–2005. The Act also subjects the mobile home owner to enforcement of park rules only if those rules are incorporated into the written agreement, I.C. § 55–2008, and gives the tenant the benefit of expanded notice periods prior to modification or termination of the agreement, I.C. §§ 55–2006 and –2010, respectively.

■ The magistrate and the district court on appeal concluded that a written rental agreement was made mandatory by I.C. § 55–2005. We agree. The original Act required that the landlord "shall offer [a written rental agreement], if the landlord or tenant so requests." However, the Act was amended in 1988 to require that the landlord "shall provide ... a written rental agreement." In addition, the 1988 amendment modified subsection (3) of § 55–2005, which specified requirements for landlords dealing with tenants in possession at the time the Act was enacted. Language was added in 1988 to § 55–2005(3) to terminate all other agreements one year from the date of the Act, bringing all mobile home rental agreements in compliance with the provisions of the Act. We read the statute, as amended, to clearly evince a policy of requiring written rental agreements with the provisions, disclosures and exclusions set forth in the Act.

In his unlawful detainer claim, Fuhrman argued that an action for recovery of back rent was still available to him even though possession was not at issue. In his second claim, Fuhrman cited *Lewiston Pre–Mix Concrete, Inc. v. Rohde*, 110 Idaho 640, 718 P.2d 551 (Ct.App.1985), as authority that an implied-at-law tenancy, such as Wright's tenancy, implied a covenant to pay rent in a reasonable amount. Fuhrman does not argue on appeal that the Act is inapplicable. However, he contends that, even without a written rental agreement, he is entitled to seek payment of back rent from Wright. In order to establish that he is entitled to recovery under the unlawful detainer statutes or under an implied agreement, Fuhrman relies on the statement in I.C. § 55–2004, which provides that "[t]his chapter does not abrogate any rights the park owner or tenant has under the laws and constitution of the United States or the state of Idaho."

However, we are constrained to construe the statute as a whole. *Sherwood v. Carter*, 119 Idaho 246, 254, 805 P.2d 452, 460 (1991), *citing Leliefeld v. Johnson*, 104 Idaho 357, 659 P.2d 111 (1983), *appeal after remand*, 111 Idaho 897, 728 P.2d 1306 (1986); *Sher-*

*wood & Roberts, Inc. v. Riplinger,* 103 Idaho 535, 650 P.2d 677 (1982). To interpret the Act both to require a written rental agreement and to recognize unwritten agreements would deprive mobile home owners of the protections guaranteed by the statute. Therefore, in order to give force and effect to the requirement of a written rental agreement, we conclude, as did the magistrate, that in the case of mobile home parks, non-written rental agreements, including implied at-law-contracts, are unenforceable.

We uphold the magistrate's denial of Fuhrman's claim that he was entitled to rent payments on account of an implied agreement which arose by operation of law. Furthermore, because Fuhrman's alternative claim under the unlawful detainer statutes presumed that Wright was in breach of an *oral* rental agreement, we also uphold the magistrate's denial of relief pursuant to the unlawful detainer statutes.

■ In keeping with our holding that only written rental agreements can be enforced under the Act, we necessarily interpret the statute to exclude recovery of any sums by Fuhrman under equitable theories not dependent upon an agreement, express or implied. We hold the Act to be the exclusive source of Fuhrman's rights and remedies as a landlord of a mobile home park, and the prerequisite to Fuhrman's claiming benefits under the Act to be a written rental agreement. *See* I.C. § 55–2002.

Accordingly, we reverse the district court's conclusion that the Act does not foreclose a right to recover under some other implied agreement, or equitable theories not based on an agreement between the parties. In all other respects, we affirm the opinion of the district court affirming the magistrate's interpretation of the Act and subsequent dismissal of the action. We award costs to respondent, Wright, but we make no award of attorney fees due to the absence of a request by either party.

WALTERS, C.J., and LANSING, J., concur.