844

118 P.3d 1232

Mike CONNOLLY, d/b/a Suntree RV Park, Plaintiff–Respondent,

v.

Grover D. POWELL, Defendant–Appellant.

No. 30688.

Court of Appeals of Idaho.

July 29, 2005.

Grover D. Powell, Post Falls, pro se appellant.

Graham & Long, Coeur d'Alene, for respondent.

LANSING, Judge.

This appeal involves the application of the Mobile Home Park Landlord–Tenant Act to an action in which Mike Connolly, the landlord and owner of the Suntree RV Park ("the

Park") sought an order to evict Grover Daniel Powell, a tenant, for the non-payment of rent. After a court trial, the magistrate ruled in favor of Connolly and entered judgment ordering that Powell vacate the premises. On intermediate appeal, the district court affirmed. We reverse.

## I.

## BACKGROUND

Beginning in August of 2000, Powell rented a lot in the Park on a month-to-month basis, and placed his mobile home there.[1] On May 7, 2003, Connolly filed a complaint for unlawful detainer pursuant to Idaho Code § 6-303, *et seq.*, seeking to evict Powell for failure to pay his $265.00 monthly rent for April and May 2003 and charges for electricity and late fees. On June 2, 2003, a court trial was conducted in the magistrate division. Powell appeared pro se and presented evidence that Connolly was seeking eviction as retaliation for Powell's complaints about excessive electrical rate charges and late fees. Powell argued that the Mobile Home Park Landlord–Tenant Act, I.C. §§ 55–2001, *et seq.* ("the Act"), including § 55–2015 concerning retaliatory conduct by a landlord, governed the case. Powell also argued that eviction was not available to Connolly because no written rental agreement had been executed by the parties as required by the Act. Powell conceded that he had not paid rent for April, May and June 2003, but asserted that he withheld the rent to offset past overcharges by Connolly.

At the conclusion of the trial, the magistrate determined that the provisions of the Act governed the action. The magistrate held that there was a written agreement, supplemented by oral terms, that met the requirements of the Act. Based upon Powell's admission that he had not paid rent, the magistrate ruled in favor of Connolly and entered judgment ordering that Powell vacate the premises. The magistrate did not address Powell's defense of retaliatory eviction. Powell appealed to the district court, which affirmed. This appeal followed.

## II.

## ANALYSIS

When reviewing a case decided in the magistrate division that has been appealed to the district court, this Court reviews the magistrate's decision independently of, but with due regard for, the district court's intermediate appellate decision. *Ireland v. Ireland,* 123 Idaho 955, 957–58, 855 P.2d 40, 42–43 (1993); *Hentges v. Hentges,* 115 Idaho 192, 194, 765 P.2d 1094, 1096 (Ct.App.1988).

### A. Retaliatory Eviction

Powell's primary contention on appeal is that the magistrate committed reversible error by failing to recognize, and rule upon, his defense of retaliatory eviction. We agree. Section 55–2015 of the Act prohibits retaliatory conduct by a mobile home park landlord.[2] It states:

The landlord shall not terminate a tenancy, refuse to renew a tenancy, increase rent or decrease service[s] he normally supplies, or threaten to bring an action for repossession of a mobile home lot as retaliation against the tenant because the tenant has:

(a) Complained in good faith about a violation of a building, safety or health code or regulation pertaining to a mobile home park to the governmental agency responsible for enforcing the code or regulation.

(b) Complained to the landlord concerning the maintenance or condition of the park, rent charged or rules and regulations.

---

1. Powell did not continuously occupy the same lot. From time to time he moved his home to different locations within the Park at Connolly's request.

2. Although Connolly argued before the trial court that the Act is inapplicable to the rentals at the Park, on appeal he acknowledges that the Act governs.

(c) Organized, became a member of or served as an official in a homeowner's association, or similar organization, at a local, regional, state or national level.

(d) Retained counsel or an agent to represent his interests.

The plain language of this section creates a retaliatory eviction defense that may be raised in an unlawful detainer action. This is an affirmative defense, and the tenant therefore bears the burden to prove that the primary motive for the eviction is retaliation for tenant actions that are protected by the statute. *Cf. Wright v. Brady,* 126 Idaho 671, 889 P.2d 105 (Ct.App.1995) (holding that retaliatory eviction is an affirmative defense to an unlawful detainer action brought pursuant to I.C. § 6–301, *et seq.*).

Here, Powell presented evidence and argument that Connolly was seeking his eviction because of Powell's complaints to Connolly about excessive electrical rate charges and late fees. Thus, Powell raised the defense of a violation of I.C. § 55–2015(b). The magistrate apparently did not recognize that I.C. § 55–2015 provided a potential defense to the eviction proceedings and that Powell had provided some evidence to support such a defense. The magistrate did not reference this code section or make any findings on the defense in his oral ruling at trial or in his subsequent written judgment. Instead, the magistrate apparently accepted Connolly's argument that the only relevant issue before the Court in the eviction action was the nonpayment of rent.

Ordinarily, this Court would vacate the judgment and remand the case to the magistrate for findings on Powell's affirmative defense. However, in light of the following section of this opinion, further proceedings are unnecessary.

## B.  Written Contract

■ In the trial court, Powell argued that Connolly was not entitled to evict Powell because Connolly had not proved that there was a written rental agreement signed by both parties as required by the Act, I.C. § 55–2005. The magistrate found that an adequate written agreement, augmented by oral terms, had been shown. In his respondent's brief, Connolly contends that Powell's appeal requires consideration of whether there was a valid written contract complying with the provisions of the Act, and Connolly also expressly identifies as an issue on appeal, "Did the parties effectuate a Written Rental Agreement?" *See* Idaho Appellate Rule 35(b)(4). Therefore, we will address the issue.

The Act requires the use of written rental agreements in mobile parks, specifies certain content that must be included in a written agreement, and provides that agreements not in compliance with the Act are unenforceable. Specifically, I.C. § 55–2004 states:

> This chapter shall regulate and determine legal rights, remedies and obligations arising from any rental agreement between a landlord and a tenant regarding a mobile home lot, except in those instances in which the landlord is renting both the lot and the mobile home to the tenant. All such rental agreements shall be unenforceable to the extent of any conflict with any provision of this chapter.

Section 55–2005(1) further provides:

> From and after the effective date [July 1, 1988] of this chapter, any landlord offering mobile home lot for rent shall provide the prospective tenant a written rental agreement. This agreement must be executed by both parties. The provisions of this chapter shall apply to all such agreements and to all other rental agreements to the extent applicable as set forth in this chapter.

With regard to required contents of written rental agreements I.C. § 55–2007(1) provides:

> (1) Any rental agreement executed between the landlord and tenant shall contain:
>
> (a) The terms for the payment of rent, including the time and place for payment,

and a description of any additional charges to be paid to the landlord by the tenant. Additional charges that occur less frequently than monthly shall be itemized in a billing to the tenant;

(b) A description of the utilities and services which are included in the monthly rent;

(c) The rules of the park;

(d) The names and addresses of the manager of the mobile home park and the owner of the mobile home park or a person who resides in the state where the mobile home park is located who is authorized to act as agent for the owner; and

(e) The terms and conditions under which any deposit or portion thereof may be withheld by the landlord upon termination of the rental agreement if any moneys are paid to the landlord by the tenant as a deposit or as security for performance of the tenant's obligations in a rental agreement.

Applying these statutory provisions in *Fuhrman v. Wright,* 125 Idaho 421, 871 P.2d 838 (Ct.App.1994), this Court concluded that "in order to give force and effect to the requirement of a written rental agreement ... non-written rental agreements, including implied-at-law contracts, are unenforceable." *Id.* at 424, 871 P.2d at 841. Accordingly, we held that because the mobile home park landlord in *Fuhrman* had never provided the tenant a written rental agreement, the landlord was not entitled to collect back rent owed under an alleged oral agreement or through other legal theories such as agreement implied in law or unjust enrichment. We held "the Act to be the exclusive source of Fuhrman's rights and remedies as a landlord of a mobile home park, and the prereq-

uisite to Fuhrman's claiming benefits under the Act to be a written rental agreement." *Id.* at 424, 871 P.2d at 841.

Subsequently, in *Post Falls Trailer Park v. Fredekind,* 131 Idaho 634, 635, 962 P.2d 1018, 1019 (1998), our Supreme Court held that because there was no written rental agreement complying with the provisions of the Act, the mobile home park landlord was precluded from evicting a tenant. The Court stated, "In *Fuhrman* the Court of Appeals properly held that the Act is the exclusive source of a landlord's rights and remedies. The landlord may not claim benefits under the Act unless a written rental agreement exists between the parties." *Id.* at 636, 962 P.2d 1018, 962 P.2d at 1020. The Supreme Court stated that the existence of a written rental agreement complying with the Act was an essential element of the landlord's claim, upon which the landlord bore the burden of proof. *Id.* at 637–38, 962 P.2d at 1021–22. Because the landlord in that case had not proven the existence of a written agreement executed by both parties or, alternatively, that the tenant had refused in bad faith to sign a proffered agreement,[3] the landlord was not entitled to evict the tenant.

Here, Connolly submitted three documents that he alleged constituted the parties' written rental agreement. The first, entitled "Monthly Guest Registration," was an unsigned form that set out terms for rental of lots in the Park. At trial, Connolly admitted that Powell had never signed the document, and Connolly did not contend that the document had even been presented to Powell for signature. Rather, Connolly acknowledged that the form was the "one that current residents, as they move in, use." The second document, entitled "Guest Information," sets out the rules and policies of the Park. It is

---

**3.** In *Post Falls Trailer Park,* the Supreme Court addressed the concern that if a written rental agreement is required for eviction or collection of rent, a mobile home owner could repeatedly refuse to sign a rental agreement and thereby preclude any remedy for the landlord. The Court stated:

> [T]he Act protects a landlord from such a result by imposing a duty of good faith:

> Every duty under this chapter and every act which must be performed as a condition precedent to the exercise of a right or remedy under this chapter imposes an obligation of good faith in its performance or enforcement.

I.C. § 55–2002. If a tenant refuses to sign a rental agreement in bad faith, the landlord may evict the tenant.
*Id.* at 637, 962 P.2d at 1021.

not in the form of an agreement and has no signature lines. The third, also entitled "Monthly Guest Registration," was signed by Powell and by "Mike" as a "clerk" on August 10, 2000. This document specifies that the Park and its management will not be responsible for injury or damages to guests or their property, requires the reporting of such injury or damage to the Park as soon as possible, specifies that tenants must pay the cost of electricity in addition to basic rent, provides for the refund of deposits within thirty days of tenants' departure, and sets out specific terms applicable to guests who have pets at the Park. Connolly did not establish at trial whether the "Guest Information" sheet was incorporated as part of the August 10, 2000, signed agreement.

On this evidence, the magistrate held that there was a sufficient written agreement supplemented by an oral agreement "relating to the payment of the rent, the amount of the rent, incorporation of the rules in the park and that sort of thing." We conclude that this was error. The Act does not allow rental agreement terms that are required by section 55–2007 to be provided by supplemental oral agreements. *Post Falls Trailer Park,* 131 Idaho at 638, 962 P.2d at 1022 ("[A]n essential element of Plaintiff's claim is the submission of a written rental agreement and rules which comport with the requirements of the Act."); *Fuhrman,* 125 Idaho at 423, 871 P.2d at 840 (Idaho Code § 55–2005 "clearly evince(s) a policy of requiring written rental agreements with the provisions, disclosures and exclusions set forth in the Act.")

The signed August 10, 2000 Monthly Guest Registration omits most of the terms required by I.C. § 55–2007(1). The document does not state the amount of monthly rent, the time or place for payment, a description of utilities and services that are included in the monthly rent, the rules of the park, the names and addresses of the manager and owner of the park, or most of the terms and conditions concerning deposits. Hence, Connolly did not satisfy his burden of showing, as an essential element of his eviction claim, a valid written rental agreement in compliance with the provisions of the Act. Given the lack of a sufficient written agreement or any evidence that Powell refused in bad faith to sign a written rental agreement, Connolly is not entitled to evict Powell. Consequently, a judgment of dismissal of this action is required.

## III.

## CONCLUSION

The magistrate court's judgment ordering Powell to vacate the premises is reversed. Costs on appeal to appellant Powell.

Chief Judge PERRY and Judge GUTIERREZ, concur.